UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
**CHRISTOPHER BRUCE and,**                  )
**AMALGAMATED TRANSIT UNION,**              )
   **Plaintiffs,**           )
                                            )
  **v.**                          )  CIV. ACT. NO. 18-40037-TSH
                                            )
                                            )
                                            )
**WORCESTER REGIONAL TRANSIT AUTHORITY,**   )
**CENTRAL MASS TRANSIT MANAGEMENT, INC.,**  )
**DAVID TRABUCCO, JAMES PARKER and**        )
**JONATHAN CHURCH,**                        )
   **Defendants.**           )
_____ )

## ORDER: Preliminary Injunction
### June 18, 2018

**Hillman, D.J.**

  A hearing on Plaintiffs' Motion For Preliminary Injunction (Docket No. 11)("PI Motion") was held on June 13, 2018.  The Court has considered the PI Motion and supporting memoranda (including the reply brief), the Defendants' opposition, and the parties' proffers and arguments made at the hearing.  For the reasons set forth below, the PI Motion is *denied*.

### Background

  Plaintiff, Christopher Bruce ("Bruce"), was terminated from his position as a bus driver for the Defendants' Worcester Regional Transport Authority ("WRTA") and Central Mass Transit Management, Inc. ("CMTM").  WRTA owns and manages the public transit system in and around Worcester, Massachusetts.  CMTM has a contract with WRTA to run the day to day

operation of buses owned by the WRTA. Bruce was a bus driver for WRTA/CMTM[1]; he had worked for the WRTA and/or related entities for over forty years. At the time of his firing, Bruce's duties consisted mainly of driving empty, out-of-service buses to and from Worcester's central bus station (the "Hub").  Recently, WRTA Advisory Board members discussed the possibility of making severe cuts to WRTA bus service, which would result in a loss of jobs for bus drivers, such as Bruce. Consequently, WRTA, CMTM and ATU Local 22, the union that represents the bus drivers, have an interest in increasing funding for the WRTA.  Bruce serves as president of ATU Local 22.

WRTA/CMTM maintains employment policies governing the terms and conditions of WRTA/CMTM bus drivers' employment.  Pursuant to those policies, disciplinary infractions are categorized as either "Class I" (most serious), "Class II" (very serious), and "Class III" (less serious).  Employees are subject to suspension the first time they commit a Class II infraction and discharge if they commit a second Class II infraction.

WRTA/CMTM's employee policies prohibit employees form "Making unauthorized Statements to the Media," and further provides that "[a]ll statements in which an employee is representing CMTM or WRTA must be pre-approved by the General Manager." Bruce had been contacted by Telemundo, an American Spanish language television network, regarding the proposed service cuts.  The camera crew for Telemundo arrived while Bruce was still working. He suggested that they wait to talk when he was through with work, but the Telemundo crew wanted to get started right away. At the time, Bruce had been instructed to bring a bus that was in good working order from the WRTA maintenance facility to the Hub to be placed into service

---

[1] There is a dispute over what entity actually employed Bruce—WRTA or CMTM (or predecessors to CMTM). For present purposes that issue need not be resolved and therefore, for the remainder of this Order, I will refer to Bruce's employer as WRTA/CMTM.

and to retrieve and return to the maintenance facility another bus located at the Hub that was in need of service. Bruce decided to accommodate the Telemundo interview before completing his assigned task. Thus, Bruce completed the Telemundo interview while he was still on duty. Moreover, he permitted the camera crew to film him, while in his work uniform, being interviewed while he driving an out-of-service bus around the Hub at a slow speed.

A news segment aired on Telemundo that night which included the interview with Bruce; the news segment lasted only a short time. Bruce is identified in the video (in Spanish) as the President of the local union. Bruce was suspended the next day. Bruce received a written notice of suspension from CMTM Operation's Manager, David Trabucco, which informed him that he was alleged to have violated three employment policies: "Failure to Follow Work Orders or Procedures"; "Making Unauthorized Statements to the Media (Newspapers, TV, Radio, etc.): ALL [sic] statements in which an employee is representing CMTM or WRTA must be pre-approved by the General Manager."; and "Willful or Deliberate Violation of or Disregard of Safety Rules or Common Safety Practices." The notice went on to specify that Bruce's interview with Telemundo, which was conducted without approval of the General Manager, violated WRTA/CMTM policy. Moreover, the letter noted that upon viewing the Telemundo segment, it was evident that during the course of the interview, which was conducted on a moving bus being driven by Bruce, he had violated several safety rules.

At the time of the suspension, Bruce had been operating under a so-called "Last Chance Agreement." That is, he had entered an agreement with WRTA/CMTM regarding a prior Class II violation (which had not been his first disciplinary infraction). In return for Bruce entering the Last Chance Agreement, WRTA/CMTM agreed to rescind his February 15, 2017 termination and reinstate his employment. Local ATU 22 also approved the Last Chance Agreement. In the

Last Chance Agreement, Bruce and Local ATU 22 agreed to "waive any and all rights they may have presently or in the future to file or assert any claim, complaint, grievance, appeal to arbitration or other action in any forum of any kind in regard to any further disciplinary action including termination invoked by the Company [WRTA/CMTM] pursuant to this Agreement." On February 13, 2018, James Parker ("Parker"), General Manager of CMTM, sent Bruce a termination letter firing him for having committed unspecified "Class II infractions." Parker's letter also banned Bruce from all WRTA property. However, he is permitted to go on WRTA property, with advance notice, to conduct union business (Bruce remains president of Local ATU 22).

Bruce and Amalgamated Transit Union have filed suit against the WRTA, CMTM, Trabucco, Parker and Jonathan Church alleging claims for: deprivation of his First Amendment Free Speech Rights, in violation of 42 U.S.C. §1983; violation of the Massachusetts Civil Rights Act, Mass.Gen.L. ch. 12, §11I; and tortious interference with employment relationship.

## Discussion

In determining whether to issue a preliminary injunction, the Court must weigh four factors:

> '(1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, *i.e.*, the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.'

*Charlesbank Equity Fund II v. Blinds to Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004)(citation to quoted case omitted). "The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *New Comm. Wireless Services, Inc., v.*

*SprintCom, Inc.,* 287 F.3d 1, 9 (1st Cir. 2002). In this case, Bruce will face significant, but perhaps not insurmountable, hurdles in establishing that he was unlawfully terminated for exercising his First Amendment Right to free speech. Nonetheless, it is not necessary for me to address whether he is likely to succeed on the merits of his claims. This is because I find that he has failed to establish the potential for irreparable harm if injunctive relief is denied. More specifically, if he prevails, Bruce will be entitled to monetary compensation (including back pay) and reinstatement and therefore, can be made whole. When I pointed this out to Plaintiffs' counsel, he suggested that Bruce's inability to adequately fulfill his obligation as union president constitutes irreparable harm. More specifically, he stated that because Bruce is barred from WRTA property, union members are unable to adequately communicate with him. However, as pointed out be the Defendants, Bruce's termination later *expressly* permits him to go on WRTA property to conduct union business with advance notice. Bruce has not proffered any evidence that he has been denied access to WRTA property to conduct union business. On the record before me, I find that the Plaintiffs have an adequate remedy at law and have not established that Bruce will suffer irreparable harm. Accordingly, the PI Motion is denied.

## Conclusion

Plaintiffs' Motion For Preliminary Injunction (Docket No. 11) is ***denied***.

**So Ordered:**

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**